(No. 21229.—

CHARLES W. DRAPER *et al.* Appellees, *vs.* JOHN W. TOPE, Appellant.

*Opinion filed April 23, 1932—*

W. SCOTT HODGES, and CAVENDER, MILCHRIST & KAISER, for appellant.

RATHJE & CONNOR, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On February 7, 1927, appellees, Charles W. Draper, Richard J. Draper, Mary D. Schutt and Wesley E. Draper, filed in the circuit court of Cook county an application for registration in their names of the fee simple title to certain real estate in Cook county. No person named as defendant

in the petition filed an answer. The cause was referred to an examiner of titles, who heard the evidence and filed his report recommending a decree granting the prayer of the application. On August 22, 1928, a decree was entered in accordance with the recommendation of the examiner of titles, ordering the title registered in the names of appellees as tenants in common. On July 30, 1930, appellant, John W. Tope, and Della W. Tope, Oliver E. Tope, Minnie L. Tope, Loraine Tope and Edith Tope, (hereinafter called defendants,) none of whom had been made parties defendant to appellees' application for registration of title to the land except by the designation "all whom it may concern," applied to the circuit court for, and were granted, leave to file their answer to the application, and on said date they filed their sworn answer, in which they alleged that they were the owners in fee simple of part of the land included in the application of appellees, and that they had no notice of the filing of appellees' application or of the pendency of the proceedings thereon or of the entry of the decree of August 22, 1928, until June 30, 1930. On July 30, 1930, defendants also filed, after leave granted, a cross-application for the registration in their names of the title to a certain part of the real estate included in appellees' application. The cause was referred to an examiner of titles to hear the evidence and make a report to the court. On August 17, 1931, the examiner to whom the cause was referred filed his report, together with the evidence. The examiner's report recommended a decree that the original decree of registration entered August 22, 1928, be confirmed. On October 16, 1931, the cross-application of defendants for registration of title to part of the land in their names was dismissed by them without prejudice. Defendants' objections to the examiner's report were overruled, and on October 20, 1931, a decree was entered in conformity with the examiner's recommendation, from which decree appellant, John W. Tope, prosecutes this appeal.

Appellees are the heirs of Hiram A. Draper and defendants are the heirs of John W. Tope, and their respective claims of title are based upon their rights as such heirs. On November 20, 1879, Tope, by warranty deed to him, acquired title to all of the land in the south section of Robinson's reserve, in Cook county, lying north of what was called the old plank road, which is now Irving Park boulevard, and south of an east and west line across the south section, which is 16 chains south of and parallel with the north line of the south section. Chain of title from the United States government to Tope is shown by the evidence. On August 22, 1881, Tope and wife conveyed to Draper a part of said real estate, described as follows: Commencing at a point in a line drawn parallel with the north line of the south section of Robinson's reservation 43 chains and 14 links east of a point in the west line of the south section of Robinson's reservation 16 chains south of the northwest corner of the south section and running thence south 16 chains and 70 links to the center of the old plank road; thence easterly along the center of the old plank road 33 chains and 36 links to the east line of the south section of Robinson's reservation; thence north on the east line 20 chains and 18 links; thence west 32 chains and 54 links to the place of beginning, containing 60.98 acres, more or less. On the same day Tope and wife conveyed to William Kolze a part of said real estate, described as follows: Commencing at a point in the west line of the south section of Robinson's reservation 16 chains south of the northwest corner of the south section and running thence east 43 chains and 14 links; thence south 16 chains and 70 links to the center of the old plank road; thence westerly along the center of the old plank road to the west line of the south section of Robinson's reservation; thence north on the west line of the south section of Robinson's reservation eight chains and 14 links to the place of beginning, excepting therefrom sub-lot 7 of lot 2 in the as-

sessor's subdivision of the south section. After the above mentioned deeds from Tope had .been recorded the county clerk filed for record, and had recorded in 1883, a division plat of the property which divided the property north of the old plank road and south of the north line of the real estate conveyed by Tope to Draper and Kolze into three lots. Lot 1 was shown as being that portion of the property east of a line running south from a point on the north line 32.54 chains west of the east line of the south section to the old plank road. Lot 2 was shown on the plat as being the portion of the property west of lot 1 and east of the middle line of the DesPlaines river, except sublot 7, and as having a north line 43.14 chains in length. Lot 3 was shown as being the portion of the property west of the middle line of the DesPlaines river and east of the west line of the south section and having a north line 4.78 chains in length. Lot 1 was marked with the name "H. Draper" and as containing 60.98 acres. Lots 2 and 3 were marked with the name "Wm. Kolze."

In 1907 there was filed and recorded a plat of the land conveyed by John W. Tope to Kolze in the deed above mentioned called "superior court partition," and this plat shows the north line of the property to be 2847.24 feet in length, which is a distance of 43.14 chains. Between the east line of the superior court partition plat and the west line of lot 1 of the county clerk's division plat is a parcel of land 4.78 chains (or 315.48 feet) in width east and west. Appellees in their application described the land that they asked to have recorded in their names as that part of the south section of Robinson's reservation described as follows: Beginning at a point 1056 feet (16 chains) south and 2847.24 feet (43.14 chains) east of the north and west lines, respectively, of said section, said point being the northeast corner of "superior court partition of part of the south section of Robinson's reservation of T. 40, N. range 12, east of the 3d P. M.;" running thence south

along the east line of said partition to the center line of Irving Park boulevard (old plank road); thence southeasterly along said center line to the east line of the section; thence north along the east line to a point 1056 feet (16 chains) south of the northeast corner of the section, and thence west to the place of beginning. Defendants in their answer denied that appellees were the owners of the west 315.48 feet of the property described in the application and which is the parcel of land between the east line of the superior court partition plat and the west line of lot 1 of the county clerk's division plat.

After the filing of the superior court partition plat the land claimed by defendants was placed on the assessor's and collector's books of Cook county and described as the east 315.48 feet of lot 2 in the county clerk's division of said property. In 1909 this property was sold for the non-payment of taxes thereon for the year 1908, and on August 18, 1911, Jacob Glos obtained a tax deed to the property. Another tax deed to this property was issued to Glos in 1914. It seems that the taxes on this property for the years from 1913 to 1927 were not paid by anyone, and there was introduced in evidence an estimate of the county clerk that the sum of $722.17 was due as taxes, with interest and costs, on this property for said years. The record shows that by a deed dated May 4, 1931, (more than four years after the filing of appellees' application for registration,) appellees acquired all right and claim of title to the tract of land 315.48 feet in width that was obtained by Glos by the tax deeds, and it further shows that on September 30, 1930, said tract of land was forfeited to the State for the non-payment of taxes thereon for the years 1927 and prior years, amounting to $722.17. Appellees introduced in evidence tax receipts showing the payment by them of the taxes on lot 1 of the county clerk's division for the years 1921 to 1927, inclusive. The record shows that on November 30, 1930, defendant Della W. Tope, appellant, John

W. Tope, and others, filed in the circuit court of Cook county a bill for the partition of the land claimed by defendants, to correct the description in the above mentioned deed from Tope and wife to Hiram A. Draper dated August 22, 1881, and to cancel the certificate of registration of title issued under the decree of the circuit court entered August 22, 1928.

Appellant concedes that the land claimed by the defendants was included in the description in the deed of the land conveyed by the deed from John W. Tope to Hiram A. Draper dated August 22, 1881 but contends that the evidence does not establish title to it in appellees that could be registered by them, because the evidence does not establish that appellees were in possession of the tract or that it was vacant and unoccupied at the time the application for registration was filed by them. In their application for registration appellees alleged that all the land described in their application was occupied by their tenants, the west half being occupied by George Geanos and the east half by the Chicago Flying Club. There is no question that appellees were in the possession of the land east of the tract claimed by defendants. The evidence shows that there is a row of trees along the east line of the tract or parcel claimed by defendants. It also shows that a man named Jacobi, who died in January, 1930, owned and lived on land located north of and adjoining the land claimed by the defendants.

The testimony of defendants' witnesses relating to the tract claimed by them is in substance the following:

Peter Kaskie testified that Jacobi was his step-father, and as a boy he lived in Jacobi's home on land just north of the land claimed by defendants. He was born in 1879 and left home when twenty years old. When he first knew the land in question it was in woods. It was cleared when he was about eight years old. Draper cleared his land first and about two years later Kolze cleared his land. A row of trees was left between the land cleared by these two men.

This row of trees has been there since that time and "was supposed to be the dividing line of the two properties." After Kolze cleared the land west of this row of trees he worked it for three or four years and then rented it to Jacobi, who paid him something like $20 a year rent. About 1895 Jacobi worked the Draper farm for two years. At that time he farmed only the land east of the row of trees and Kolze farmed the land west of the row of trees. There was a fence between the land of Kolze and that of Draper that was in bad repair. It was re-built by Jacobi, and he and witness also dug a ditch on the east side of the fence, running north across the Draper land from Irving Park boulevard. After witness left home he visited Jacobi two or three times a year. After Jacobi rented the land west of the row of trees from Kolze he continued "to work it until the year 1929." In 1929 witness helped Jacobi cut hay on the land claimed by defendants.

Thomas Jones testified that Jacobi was his step-father, and he lived at his home, north of the land claimed by defendants, until he was about fourteen years of age, which was about 1900. Since he left Jacobi's home he has been back there two or three times each week. The land west of the row of trees was cleared "about 1892 or 1894" by William Kolze, who thereafter worked the tract for probably two years. The tract contained about twenty-two acres. Some time after this tract was cleared Jacobi rented it from Kolze and farmed it until his death, in January, 1930. He paid rent for the land. The Draper land was east of the row of trees. During the years 1928 and 1929 Jacobi farmed the land claimed by defendants. Witness helped him plant and harvest the hay on the land. He had hay, corn, tomatoes, beans and oats on the land. The tract of land that Jacobi worked extended from the row of trees on the east to the timber at the west end of the field. Jacobi worked this land just as close to the row of trees as he could get.

Mrs. Peter Kaskie testified that she has known Mr. and Mrs. Jacobi about seven years. After she was married she went to their house two or three times a week for five years and for the next two years she visited them as often as four or five times a week. Jacobi's house was located northwest of the row of trees east of the tract in question. She has seen Jacobi working in the field between his house and Irving Park boulevard and west of the row of trees. She helped him work the land during the years 1927, 1928 and 1929.

Mrs. Thomas Jones testified that she is the wife of the Thomas Jones who testified and has known Jacobi for eighteen years. His house is northwest of the row of trees east of the tract of land in question. Jacobi worked on the land clear up to that row of trees. She was at his house about three times a week and has been there when he was working in that field. He raised corn, tomatoes, beans and peas. In 1929 he put up hay on that land.

The evidence for appellees concerning the possession of the land in question was the testimony of appellee Wesley E. Draper, which is, in substance, the following: He is the son of Hiram A. Draper and is thirty-five years old. He lived on the land described in appellees' application for registration and worked on the land for his father until his father's death, in 1918 or 1919. After his father's death he farmed the land himself until about 1925. There has been a tenant (a truck gardener, George Geanos,) living on and cultivating the west half of the land for nine or ten years. He pays rent to the witness. Witness never farmed any land west of the row of trees, and his tenant, Geanos, has not cultivated any land' west of the row of trees for several years but did cut hay on the land west of the row of trees in 1929 or 1930. Witness remembers that there is a slight ditch east of the row of trees. Jacobi cultivated part of the land west of the row of trees for a number of years and never paid any rent to witness. Jacobi cultivated

that land up to ten or twelve years ago and might have cultivated it after that. Witness would say it was ten years since Jacobi did any actual cultivation of that land. Witness' father owned some land north of that owned by Jacobi and had no roadway to that land. Witness' understanding is that his father permitted Jacobi to cultivate part of his land in consideration of being permitted to cross Jacobi's land to get to the land he owned north of Jacobi's farm.

It clearly appears from the evidence in the record that the west 315.48 feet of the land described in appellees' application for registration of title, and which is the land claimed by the defendants, lies west of the row of trees referred to in the testimony of the witnesses. It is also clearly shown that none of appellees ever farmed or were in possession of that tract of land.

There is other evidence in the record given by both parties, but in the view we take of the case it is not necessary to consider any of that evidence.

An applicant for the initial registration of title must establish a title good as against the world. If an applicant for initial registration of the title in fee fails to establish such title in himself he is not entitled to registration. (*Glos* v. *Kingman & Co.* 207 Ill. 26; *Glos* v. *Holberg,* 220 id. 167; *Teninga* v. *Glos,* 266 id. 94.) If the applicant does not show such title in himself a defendant to the application may raise the question that the applicant has not shown a title proper to be registered, regardless of whether the title or claims of the defendant to the title are but mere clouds. (*Glos* v. *Kingman & Co. supra.*) An applicant for registration of land title, to be entitled to a decree in his favor, must show that the premises involved at the time the application for registration is made are unoccupied or that they are in the possession of the applicant or of someone claiming under him. *Jackson* v. *Glos,* 243 Ill. 280; *Brooke* v. *Glos,* id. 392; *Harty* v. *Glos,* 272 id. 395.

The evidence in the record tends to establish that after the deeds from John W. Tope to Hiram A. Draper and to William Kolze were executed Draper took possession of the land east of the line shown on the county clerk's division plat as the west line of lot 1 and that Kolze took possession of the land west of that line; that the row of trees referred to in the evidence is on the west line of lot 1; that neither Draper nor his heirs, the appellees, took possession of the land claimed by defendants, which is west of said line, prior to the time of the filing of appellees' application for registration of title on February 7, 1927, and that the land west of that line included in the description of the land that appellees ask to have registered in their names was farmed and cultivated by Jacobi, as a tenant of Kolze, until after the application of appellees had been filed. The evidence, therefore, does not establish that appellees were at the time of filing their application in possession of the parcel of land claimed by defendants or that said parcel of land was vacant and unoccupied. It follows from the authorities above cited that they did not make out a case that warranted a decree for registration in their names of the title to the west 315.48 feet of land described in their application. Whether defendants' claim of title to that land is well founded or not it is unnecessary to determine. They are in a position to raise the question of the failure of appellees to prove title in fee to said land good as against the world even if their claim of title is not well founded. *Glos* v. *Kingman & Co. supra.*

The decree of the circuit court in so far as it confirms the decree of August 22, 1928, ordering registration in the names of appellees of the title to the west 315.48 feet of the property described in appellees' application for registration of title and awarding costs against defendants is reversed and the cause is remanded.

*Reversed and remanded.*