Victor Cohn, Appellee, v. Rose Litwin, Appellant.

Gen. No. 41,657.

Heard in the third division of this court for the first district at the April term, 1941. Opinion filed June 25, 1941.

Joseph F. Elward, of Chicago, for appellant; Raymond F. McNally, Jr., of Chicago, of counsel.

McInerney, Epstein & Arvey, of Chicago, for appellee; George L. Siegel, of Chicago, of counsel.

Mr. Presiding Justice Hebel delivered the opinion of the court.

This is an appeal by the defendant, Rose Litwin, from a final judgment for possession, entered in a forcible entry and detainer action, in favor of Victor Cohn, plaintiff, of the premises at 4217 South Maplewood avenue, Chicago, and legally described as follows: Lots 28 and 29 in Block 3 of Phare & Sackett's Subdivision of the North 12 acres of the South 32 acres of the East Half of the North East Quarter of Section 1, Township 38 North, Range 13 East of the Third Principal Meridian, in Cook County, Illinois. From the record in the case, it appears that foreclosure proceedings were filed on September 21, 1933, in the superior court of Cook county, by Anton Litwin and Agnes Litwin to foreclose a $4,500 mortgage. The foreclosure decree entered on January 30, 1937, found there was due to Anton Litwin the sum of $5,790.68 plus other sums for attorney's fees, expenses and costs, and directed the sale of the premises to satisfy the indebtedness. The decree contained the usual provisions that if the premises are not redeemed, a master's deed shall issue to the holder of the certificate of sale; that upon the execution of the deed the grantee be let in possession of the premises, and that any of the parties to the cause who may be in possession of the premises and any person who since the commencement of the suit shall have come into possession under them, or either of them, shall surrender possession to said grantee. On June 21, 1938, the defendant filed her petition alleging an assignment of the certificate

of sale by Anton Litwin, and praying that the special commissioner be ordered to issue his deed to her. To this petition Anton Litwin filed an amended answer and a cross-petition alleging that the assignment had been procured through the deceit and fraud of the defendant, and praying that the assignment be set aside and that the special commissioner issue the deed to him. On February 19, 1940, the superior court entered an order whereby the assignment of the certificate of sale was set aside, and a master in chancery was ordered to issue his deed to Anton Litwin or his assignee.

Subsequent to the decree of foreclosure, the special commissioner's sale was held on February 25, 1937, and Anton Litwin purchased the property and acquired the certificate of sale. On April 3, 1937, the special commissioner's report of sale was approved and filed. The defendant filed her petition on June 21, 1938, in which she alleged: that the special commissioner's certificate of sale, which had been issued to Anton Litwin on February 25, 1937, had been assigned to her on April 14, 1937; and that on May 26, 1938 (After the expiration of the period of redemption) she had presented the certificate and assignment attached thereto to the special commissioner, who had refused to issue his deed to her. The prayer of the petition was that the special commissioner be ordered to issue his deed to her.

Anton Litwin, husband of the defendant, filed his amended answer to the petition, in which he alleged that the assignment had been executed by him through fraud in the inducement; the amended answer prayed that the certificate of sale be turned over to him and for an accounting of rents. He also filed a cross-petition praying for the removal of a certain affidavit as a cloud on the title, for an accounting, and that the assignment be set aside and that the special commissioner issue the deed to him. The registrar of titles of Cook county was made a party to the proceedings.

On February 19, 1940, the superior court of Cook county entered its final order whereby the certificate of sale was ordered returned to Anton Litwin, the assignment was set aside and a master in chancery was ordered to issue his deed to the premises to Anton Litwin or to his assignee, and the defendant, Rose Litwin, was ordered to account to Anton Litwin. The defendant, Rose Litwin, appealed from this final order direct to the Supreme Court and that court (in the case of *Litwin v. Litwin*, 375 Ill. 90) said—upon the contention that the court was without jurisdiction for the reason that a freehold was not involved—in its opinion:

". . . The rule is that a freehold is involved where the necessary result of the decree is that one party gains and another loses a freehold, or the title is put in issue by the pleadings so that determination of the case decides that issue. (*Hursen v. Hursen*, 209 Ill. 466; *Harper v. Sallee*, 372 id. 199.) Here, the controversy involves a master's certificate on which the period of redemption expired before this proceeding was instituted. The petition prayed that a deed be issued to appellant and the order of the trial court directed that a deed be issued to appellee. Therefore, the necessary result of the suit is that one of the parties will get title to the premises to the exclusion of the other. It is true that a master's certificate does not convey title to the purchaser and only confers a right to obtain a title subject to redemption, (*Kronenberger v. Heinemann*, 190 Ill. 17; *Allison v. White*, 285 id. 311;) but more than mere ownership of the certificate is involved here. The period of redemption has expired and the right to obtain title subject to redemption has ripened into an absolute right to a deed. A freehold is involved." The court there further said:

"Appellant contends the court below erred in affirming the master's report which included a finding that the assignment of the certificate of sale was pro-

cured by fraud. She claims there was a valuable consideration for the assignment, namely, the promise to pay and actual payment of taxes on the property and the master's fees in the foreclosure proceedings. Appellant testified she negotiated a loan from her son and used the money for the tax payments and master's fees. Some of the largest payments were made before she claims to have received such money. The evidence tends to show that the money for these expenses came from her husband's earnings, since she had no other source of income during this period. Moreover, appellant says the assignment was made by her husband because he had no money to pay the charges. Yet the evidence shows he was working during this time and earning $60 to $75 per week. Her son testified the loan was made from his safety deposit box during the month of April, 1937. The bank records show that he had not been to his box during April, and his testimony varies from that of appellant as to the time and amount of the loans. The evidence on behalf of appellant as to consideration does not support her claim. The argument that the assignment by her husband was a gift to appellant, besides being inconsistent with the claim that consideration was given, is not supported by any evidence.'' The court then passes upon and finds that the determination of the chancellor that the assignment of the certificate of sale was procured by fraud on the part of appellant is well supported by the evidence. The court there further said:

''Appellant contends that the court below erred in affirming that part of the master's report which found for appellee on the charge of fraud and no consideration for the assignment of one-half interest in the trust deed in 1936. In her bill for separate maintenance, appellant alleged her husband owed her $1000, life savings which he borrowed from her, and that he had deserted her. On cross-examination she admitted

the allegation as to the money was false. Appellee testified 'she kicked me out from the home.' His testimony was not contradicted. There is nothing in the record which tends to show appellant had any ground for separating from her husband or for separate maintenance. Therefore, when promising to resume her marital status, she was merely promising to do what she was already in duty bound to do. A promise of that kind was not a sufficient consideration for the assignment. (*Smith v. Gray,* 316 Ill. 488; *Goldsborough v. Gable,* 140 id. 269.) While dismissing a suit or surrendering a claim is good consideration for a promise or an act, the suit or claim must be entertained in good faith. (*Dougherty v. Duckels,* 303 Ill. 490; *Janci v. Cerny,* 287 id. 359.) Appellant did not meet the issue of no consideration or the claim of fraud. She made no claim that it was a gift, and cannot in this court, for the first time, claim the assignment was a gift." The court then in passing upon the questions affirmed the order of the superior court except to modify the order by striking therefrom the sum of $403.65 as master's fees and inserting the sum of $103.65 in lieu thereof.

It appears from the record before this court that on July 8, 1940, the master's deed was issued to the plaintiff, Victor Cohn, as assignee of Anton Litwin. On August 22, 1940, an original Torrens certificate issued in the name of the plaintiff. Subsequently, on September 19, 1940, the plaintiff caused to be served a demand for possession of the premises upon the defendant.

It further appears from the facts as they are in this record that plaintiff was the nephew of J. S. Cook and that Mr. Cook and his associate, Mr. Joseph Bergman, had been attorneys for Anton Litwin in the superior court foreclosure case, and also in a divorce case filed by Anton Litwin against the defendant, Rose Litwin. The substance of plaintiff's testimony was

that he had "bought" the propery from Anton Litwin on July 11, 1940, with a loan from Mr. Cook to him. The plaintiff had signed nothing to evidence this loan ($2,750), had never seen the property, and had nothing further to do with the transaction than to permit his name to be used as grantee.

The defendant testified that she lived on the premises involved, that she married Anton Litwin on October 3, 1934, and that in December, 1937, she and her husband moved into the building in question. They lived there until June 11, 1938, at which time he left and she continued to reside there.

There was introduced into evidence a decree of the superior court of Cook county, entered May 18, 1940, in the suit entitled "Anton Litwin, plaintiff, v. Rose Litwin, defendant," No. 38S 4785, which decree found the issues for Rose Litwin and against Anton Litwin, found that on June 11, 1938, he had wrongfully deserted her and had thereafter persisted in his desertion, and dismissed Anton Litwin's suit for divorce and ordered him to pay separate maintenance to the defendant, Rose Litwin.

Defendant contends that the trial court had no jurisdiction of the case, as the only section of the Forcible Entry and Detainer Act under which the action could possibly lie was the sixth clause of section 2, which defendant contends does not cover the case at bar. This contention of defendant is contradicted by plaintiff, the plaintiff contending that the action is maintainable under the second and sixth clauses of section 2 of the Forcible Entry and Detainer Act. The Forcible Entry and Detainer Act (Ill. Rev. Stat. 1939, ch. 57, sec. 2 [Jones Ill. Stats. Ann. 109.264]) provides that the person entitled to the possession of land may be restored thereto:—

". . . Second, When a peaceable entry is made and the possession unlawfully withheld. . . . Sixth, When lands or tenements have been conveyed by any grantor

in possession, or sold under the judgment or decree of any court in this state, or by virtue of any sale in any mortgage or deed of trust contained and the grantor in possession or party to such judgment or decree or to such mortgage or deed of trust, after the expiration of the time of redemption, when redemption is allowed by law, refuses or neglects to surrender possession thereof, after demand in writing by the person entitled thereto, or his agent."

In discussing this question it would be well to have in mind the provisions of the Homestead Act. Section 1 of the act (Ill. Rev. Stat. 1939, ch. 52, sec. 1 [Jones Ill Stats. Ann. 107.124]) provides:

"That every householder having a family, shall be entitled to an estate of homestead, to the extent in value of $1,000, in the farm or lot of land and buildings thereon, owned or rightly possessed, by lease or otherwise, and occupied by him or her as a residence; and such homestead, and all right and title therein, shall be exempt from attachment, judgment, levy or execution, sale for the payment of his debts, or other purposes, and from the laws of conveyance, descent and devise, except as hereinafter provided."

At the date of the execution and delivery of the master's deed to plaintiff as well as at the time of the service of the demand for possession on September 19, 1940, the plaintiff, Victor Cohn, was chargeable with knowledge of all persons in possession of the premises that he claims are subject to the forcible entry and detainer action. At that time and long before the defendant, Rose Litwin, upon whom the demand for possession was served, was in actual possession of the premises as her residence. She claims a homestead estate as provided for by the statute and that this action of forcible entry and detainer is not available to plaintiff to dispossess her. Section 2 of the Homestead Act (Ill. Rev. Stat. 1939, ch. 52, sec. 2 [Jones Ill. Stats. Ann. 107.125]) further provides: that the ex-

emption of homestead ''shall continue after the death of such householder, for the benefit of the husband or wife surviving, so long as he or she continues to occupy such homestead, . . . and in case the husband or wife shall desert his or her family, the exemption shall continue in favor of the one occupying the premises as a resident.''

Upon an examination of the Husband and Wife Act (Ill. Rev. Stat. 1939, ch. 68, sec. 16 [Jones Ill. Stats. Ann. 64.16]) we find the provision that:

''Neither the husband nor wife can remove the other or their children from their homestead without the consent of the other, unless the owner of the property shall, in good faith, provide another homestead suitable to the condition in life of the family; . . . There is nothing appearing in this record that any provision was made for ''another homestead'' for defendant, Rose Litwin, by the husband, Anton Litwin. She continued to reside in the property as her homestead, and she thereby acquired certain rights which she is entitled to, and of which she cannot be deprived unless another homestead is provided or unless an estate of homestead is set apart for her.

The question that is really involved is whether the trial court has jurisdiction to entertain and enter a final judgment order for possession of the premises in favor of plaintiff. As already stated, it appears that plaintiff was the nephew of J. S. Cook, who with his associate, Joseph Bergman, had been attorneys for Anton Litwin in the foreclosure case and in the divorce case filed by Anton Litwin against defendant, Rose Litwin; that the substance of plaintiff's testimony was that he had bought the property from Anton Litwin with a loan from Mr. Cook to him; that he (plaintiff) had signed nothing to evidence this loan, had never seen the property, and had nothing further to do with the transaction than to permit his name to be used as grantee.

Plaintiff urges that prior to the delivery of the master's deed the holder of a certificate of sale has neither legal nor equitable title, nor does he have any right to possession, and that, therefore, Anton Litwin, as owner of the certificate of sale, did not because of such ownership acquire a homestead in the premises which can now inure to the benefit of defendant. It is contended that until the issuance of a master's deed, the holder of a certificate of sale has neither legal nor equitable title, does not have any right of possession, and that his rights in those respects are the same before and after the expiration of the redemption period. However, when we consider the opinion of the Supreme Court in *Litwin v. Litwin, supra,* the court there stressed the rule that a master's certificate does not convey title to the purchaser and only confers a right to obtain a title subject to redemption, but the court (upon the facts as they appear in this record) held that ". . . more than mere ownership of the certificate is involved here. The period of redemption has expired and the right to obtain title subject to redemption has ripened into an absolute right to a deed. A freehold is involved." A freehold estate is, of course, having a right of title to the land in question. The defendant, Rose Litwin, being in possession and ascertaining a right to an estate of homestead could not be dispossessed by a judgment entered in a forcible entry and detainer litigation. (*Van Winkle v. Weston,* 276 Ill. App. 66.) The court in its judgment could not pass upon the question of title and set off a homestead estate such as was involved in this action.

The court in *Van Winkle v. Weston, supra,* said:

"The sole question remaining for consideration is whether or not an action of forcible entry and detainer under the statute may be maintained to recover possession of premises occupied as a homestead. No cases have been cited in support of this position. This action is a statutory action and should be strictly

followed. There is no doubt but that in a proper action relief could be obtained, but in such an action it would be necessary to establish the value of the homestead right in order to ascertain how far this right extended and this we believe cannot be done in such a proceeding as the one before us. . . . The right of homestead is conferred by statute and can be divested only in the manner provided. *Hubbell v. Canady,* 58 Ill. 425. . . . Under the authorities cited we are of the opinion that the action of forcible entry and detainer will not lie to secure the possession of premises occupied as a homestead. Plaintiff contends, however, that in view of the fact that the premises consisted of a three-apartment building with the land underneath, the judgment should be sustained as to the two vacant apartments on the theory that these were not occupied as a homestead and we are referred to the case of *Potter v. Clapp,* 203 Ill. 592. In support of this contention plaintiff offered testimony showing that the value of the property was $8,000 at the time of the commencement of the action. The case referred to by plaintiff, however, was an action in equity asking for the assignment of dower and homestead in the real estate involved in that proceeding. It was intimated in that opinion that a person occupying a separate apartment might be in the position of one keeping a home on a separate lot. It is true that a homestead might not extend to the whole building where only one apartment was occupied as a homestead, particularly in the present age and generation where apartment buildings are so huge and occupied by so many tenants. Such a situation, however, can be easily taken care of in a proper proceeding where evidence can be shown for the purpose of arriving at the value of the homestead and proper steps taken to protect the homestead rights, but we are still of the opinion that forcible entry and detainer is not a proper action to dispossess one claiming under such a title. If this were permitted cases of this character might re-

solve themselves into questions of value and surrounding conditions which would require the introduction of evidence which is not contemplated under the action here." The court in that case reversed the judgment of the municipal court for the reasons stated in the opinion.

The plaintiff, however, contends that the Torrens certificate of title is conclusive evidence of plaintiff's right to possession, and that the master's deed and Torrens certificate show title in plaintiff, and even in absence of statute this makes a *prima facie* case of plaintiff's right to possession. It is stated by plaintiff that the act for the registration of titles (Ill. Rev. Stat. 1939, ch. 30, sec. 86 [Jones Ill. Stats. Ann. 132.042]) provides that except in case of fraud no person taking a transfer of registered land or any interest therein shall "be affected with notice, actual or constructive, of any unregistered trust, lien, claim, demand or interest; and the knowledge that any unregistered trust, lien, claim, demand or interest is in existence shall not of itself be imputed as fraud."

The reply to this contention of the plaintiff is that section 18 of the act concerning land titles (Ill. Rev. Stat. 1939, ch. 30, sec. 62 [Jones Ill. Stats. Ann. 132.018]) provides:

". . . The examiner may receive in evidence any abstract of title or certified copy thereof issued in the ordinary course of business by makers of abstracts; but the same shall not be held as more than *prima facie* evidence of title, and any part or parts thereof may be controverted by other competent proofs."

The court in *Brooke v. Glos,* 243 Ill. 392, in passing upon the question whether there must be evidence presented to the examiner and preserved in the record establishing whether the premises were vacant or unoccupied, said:

"As to the second proposition, the statute (paragraph *e* of section 11) provides the application shall state 'whether the land is occupied or unoccupied, and,

if occupied by any other person than the applicant, the name and post-office address of each occupant, and what estate or interest he has or claims in the land;' and section 18 provides, among other things, that the examiner to whom the case shall be referred shall 'proceed to examine into the title and into the truth of the matter set forth in the application, and particularly whether the land is occupied, the nature of the occupation, if occupied, and by what right, and make report in writing to the court, the substance of the proof and his conclusions therefrom.' These provisions of the statute we think clearly mandatory. This court has repeatedly held that the applicant must show in himself a title against the whole world; (*Glos v. Kingman & Co.* 207 Ill. 26; *Glos v. Cessna,* id. 69; *Glos v. Holberg,* 220 id. 167); and without proof as to who is in possession of the premises if occupied, or that they are vacant and unoccupied, it would be impossible for the court to determine whether the title in fee rested in the applicant or not." For a failure on the part of the applicant to establish by proof, in accordance with the averments of her application, that the premises were vacant and unoccupied, the decree was reversed.

In the instant case there is no evidence upon this question, so that from that fact the certificate of title that was issued under the provisions of the Torrens law is not conclusive against the defendant. As we have already stated in this opinion the plaintiff received the conveyance of the title to the premises but he made no effort to investigate and determine from the facts whether the land was occupied or unoccupied. Under such circumstances and under the decision of the Supreme Court in *Brooke v. Glos,* 243 Ill. 392, it was error in not making such proof and for the reasons stated it was error in not making the proof required.

It is contended that the Torrens certificate was not conclusive evidence against the defendant because plaintiff held title for the purpose of defrauding her of her dower and homestead rights. Section 88, ch. 30, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 132.044], provides in substance that in an action for the possession of land the certificate of title of the registered owner shall, except as to a person not bound by the decree of court, "or by some limitation herein or in some other statute contained," be held to be conclusive evidence of title to the land. However, chapter 30, section 84, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 132.040], provides in part that the registered owner shall hold title subject only to certain charges and to charges noted on the certificate, "except in cases of fraud to which he is a party, or of the person through whom he claims without valuable consideration paid in good faith." The facts are that plaintiff is an insurance broker using the office of his uncle, J. S. Cook. Another lawyer in the office is Joseph Bergman. Both these attorneys represented Anton Litwin in his divorce suit and in the suit between him and the defendant involving the assignment of the certificate of sale of the real estate, Mr. Bergman's name appearing in the final order in regard thereto. It further appears from the evidence that the only conversation the plaintiff ever had with Anton Litwin was in Mr. Cook's office sometime in April, 1940. Messrs. Cook and Bergman were both present, and at that time plaintiff was told that this was the man from whom he was buying the property. Plaintiff had never seen the property, and had not seen it at the time of the trial. Nothing was said about the price. According to plaintiff's testimony the "sale was completed on July 11, 1940." The master's deed was issued in the name of the plaintiff on July 8, 1940. Plaintiff testified that he borrowed from his uncle $2,750 for the purpose of

buying the property, and that payment was by cashier's check payable to the order of Anton Litwin. Here is presented a question of fact, as immediately thereafter the plaintiff testified the money came from Mr. Cook's account in a cashier's check payable to plaintiff's order. The check was turned over to Mr. Litwin, according to plaintiff's testimony, and although the one time the plaintiff had ever met Mr. Litwin was in April, 1940, the check passing was on July 11, 1940. The obvious deduction is that plaintiff simply holds title for Anton Litwin or for Mr. Litwin's lawyer, Mr. Cook. In either case, the effect of the implied trust is to keep the title out of Anton Litwin's name in an effort to bar the defendant from her dower and homestead.

As we have indicated from this opinion, the court erred in entering judgment for possession for the plaintiff in the forcible entry and detainer case against the defendant. For the reasons stated, the judgment is reversed.

*Judgment Reversed.*

DENIS E. SULLIVAN and BURKE, JJ., concur.